IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Criminal No. 3:07-CR-380-D |
| | § | |
| LONNIE OLIVER, JR., | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION

Defendant Lonnie Oliver, Jr. ("Oliver") moved for reconsideration of the court's decision denying his motion to suppress. *See United States v. Oliver*, 2008 WL 1849010 (N.D. Tex. Apr. 25, 2008) (Fitzwater, C.J.) ("*Oliver II*"). At the July 11, 2008 pretrial conference, the court orally denied Oliver's motion.[1] The court now sets forth its reasoning.[2]

---

[1] On July 9, 2008 Oliver filed two *pro se* motions to reconsider. Because the arguments in the motions are the same and the wording of the two motions is nearly identical, the court treats the filings as one motion to suppress. To the extent that other motions that Oliver filed just prior to trial raise arguments that challenge the suppression ruling, they restate in some form those contained in Oliver's motion to reconsider. Accordingly, in deciding the motion to reconsider, the court has addressed all the grounds on which Oliver relies.

[2] Oliver filed a flurry—almost 20—*pro se* motions after the motion deadline and on the eve of trial. Due to the volume and timing of the motions, the court was unable to determine which motions needed more elaborate rulings and, in particular, whether a written decision should be filed that addressed his motion to reconsider. Oliver entered a Fed. R. Crim. P. 11(a)(2) conditional plea of guilty on the first day of trial, and he has preserved for appeal only his motions to suppress and to reconsider. Accordingly, assuming *arguendo* that the motion to reconsider is timely under the scheduling order, the court need only address that motion by written ruling. Oliver has relinquished the other

I

Federal agents seized Oliver's laptop computer without a warrant from the apartment of his former girlfriend, Erika Armstrong, ("Armstrong") on November 20, 2007. In considering the admissibility of the laptop computer, the court assumed *arguendo* that the initial seizure of the laptop computer was unlawful. *Oliver II*, 2008 WL 1849010, at *10. Federal agents later secured a search warrant to search the laptop's contents. *Id.* Because Oliver never argued that the later search warrant was based on tainted knowledge or the fruit of the poisonous tree, the court held that the initial seizure of the laptop, even if illegal, fit within the independent source doctrine and could not serve as a basis for suppressing the laptop as evidence. *Id.*

In his motion to reconsider, Oliver contends that recently-discovered evidence——the results of data analysis of the laptop computer——reveals that federal agents unlawfully searched the contents of the laptop computer on November 21, 2007, the day after agents seized it. At the pretrial conference, the court heard testimony from Special Agent Heather McReynolds, U.S. Department of Labor, Office of Inspector General ("Agent McReynolds") and U.S. Postal Inspector Daryl Floyd, Program Manager, Joint Missions Support Group for Digital Evidence Unit. The court finds that their testimony establishes by a preponderance of the evidence that

---

motions under the terms of the plea agreement.

federal agents did not search the computer after it was seized on November 20, 2007, and that the computer's start-up and shut-down processes, and processes related to the computer's hibernation mode, accounted for the data indicating that certain of the laptop computer's files were modified on November 21, 2007.

But even if federal agents had searched the laptop on November 21, 2007, the laptop computer would still be admissible under the independent source doctrine because the government later obtained a search warrant for the laptop, and Oliver has yet to undermine the validity of the subsequent search warrant. *Id*. Consequently, Oliver's newly discovered evidence does not alter the court's denial of his suppression motion.

II

Oliver asserts that the suppression hearing evidence establishes that Agent McReynolds searched through the pockets of his clothing, which Oliver had left at Armstrong's apartment. Oliver requests that the court suppress, as the fruit of an unreasonable, warrantless search, a piece of paper that Agent McReynolds found in the pockets of Oliver's clothes.

This is the first time that Oliver has specifically challenged the search of his clothes pockets and the seizure of the piece of paper found inside the pockets. Although Oliver's original motion to suppress challenged in general terms federal agents' search of Armstrong's apartment, Oliver neither specifically requested in

that motion that the court suppress a piece of paper found in Oliver's pockets, nor did he even mention a search of his clothes pockets. The court first learned at the April 9, 2008 suppression hearing that federal agents had searched Oliver's clothing found in Armstrong's apartment. Even after this evidence was disclosed during the hearing, Oliver did not argue that the piece of paper should be suppressed. Rather, his counsel[3] focused exclusively on suppressing incriminating statements that he had made to federal agents and various items seized from Armstong's apartment, i.e., a cardboard box and its contents, and a laptop computer. Oliver first sought to suppress the piece of paper that Agent McReynolds found in his clothes pockets less than one week before trial, two days before the pretrial conference, and three months after the suppression hearing. The court denied the motion and declined to consider the merits of Oliver's challenge to the piece of paper found in his clothes pockets because the court never considered the search of the clothes pockets in denying his suppression motion, the government has not had a chance to respond to Oliver's new challenge, and Oliver waived this new challenge by raising it for the first time less than one week before trial.

---

[3] Oliver was then represented by appointed counsel. The court later approved his motion to proceed *pro se*.

III

Oliver next argues that Armstrong's consent for federal agents to enter her apartment was ineffective because federal agents obtained her permission through deception. Armstrong testified at the suppression hearing that, when two federal agents came to her apartment door, they told her, among other things, that they had come to her apartment because Oliver said that he had left some things there. Oliver posits that this representation was false.

There is no record evidence tending to show that the federal agents' representation to Armstrong was in fact false. Oliver simply asserts in his motion that he never made this statement. Moreover, even if the representation was false, the suppression hearing evidence did not establish that this particular statement caused Armstrong to consent to the federal agents' entering her apartment. According to a preponderance of the credible evidence, the agents and Armstrong had a brief conversation before she invited them inside, during which the agents related several other things to Armstrong, other than the representation about which Oliver complains. A number of other factors could have influenced Armstrong's decision to allow the agents inside her apartment, and Armstrong never testified about how the statement in question affected her decision to consent.

IV

Oliver argues that, in deciding not to suppress the cardboard box and its contents, the court misapplied the private search doctrine. Relying on *United States v. Runyan*, 275 F.3d 449 (5th Cir. 2001), Oliver maintains that, for the private search doctrine to apply, the private searchers must communicate to the government agents the results of the private search, so that the government agents can be substantially certain of the contents of a particular container before they search it. The court rejected this contention because it misunderstands *Runyan*.

The requirement in *Runyan* that police be substantially certain, based on statements of the private searchers, of what is inside a container before they search it applies to situations in which the police have "examnine[d] a closed container that was *not* opened by the private searchers[.] *Id.* at 463 (emphasis added). For containers that have already been searched by private searchers, the defendant's expectation of privacy has already been frustrated, so police do not need to know what is inside before they conduct a search. *See id.* at 461. After analyzing, in light of the suppression hearing testimony, all the possible closed containers inside of the cardboard box, the court found that "in searching the cardboard box without a warrant, the agents did not search any closed container that Armstrong had not already searched." *Oliver II*, 2008 WL 1849010, at *9. Therefore, the fact

that Armstrong never communicated to federal agents the contents of the closed containers did not affect the court's ruling that the federal agents' search of the cardboard box fit within the private search doctrine.

V

Invoking the *McNabb-Mallory* rule, Oliver contends that his arresting officers' delay in bringing him before a magistrate judge following his arrest requires the suppression of the confession he made within hours of his arrest. In another motion that Oliver filed a few weeks before trial, Oliver raised the same argument, and the court already rejected it. *See United States v. Oliver*, 2008 U.S. Dist. LEXIS 54236, at *4-*6 (N.D. Tex. July 8, 2008) (Fitzwater, C.J.) ("*Oliver V*"). The court adhered to *Oliver V* in denying this ground of Oliver's motion.

VI

Last, Oliver maintains that the government violated his Fifth Amendment right to counsel when federal agents proceeded with a custodial interrogation in the face of Oliver's refusal to sign a waiver of his Fifth Amendment rights. The court has already rejected this argument in *Oliver II* and again in *Oliver V*. *See Oliver II*, 2008 WL 1849010, at *4-*5; *Oliver V*, 2008 U.S. Dist. LEXIS 54236, at *4. The court in denying his most recent contention has relied on the reasoning of its prior decisions.

\* \* \*

For the reasons stated, the court denied Oliver's July 9, 2008 motion to reconsider the court's denial of his suppression motion. All other motions that raised essentially the same arguments were likewise denied on these grounds.

July 22, 2008.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE